The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young, the briefs and oral arguments before the Full Commission. Plaintiff has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Defendants have shown good ground to reconsider the evidence; receive further evidence and amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with respect to plaintiffs appeal and modifies it with respect to defendants appeal.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times.
3. ITT Hartford was the carrier on the risk at all relevant times.
4. The plaintiffs average weekly wage on 18 June 1996 was $220.20, yielding a compensation rate of $146.67.
5. The plaintiff sustained an injury by accident arising out of and in the course of her employment on 18 June 1996, when she suffered an electrical injury after reaching into a power box for keys to open the defendant-employers restaurant.
6. The defendant-employer paid the plaintiff temporary total disability for the injury by accident at the rate of $146.67 per week from 22 July 1996 until 30 August 1996.
7. The issues presented are:
a) Whether the plaintiffs blurred vision, carpal tunnel syndrome, back, right shoulder and neck pain are the result of an injury by accident occurring on 18 June 1996?
b) Is the plaintiff entitled to any benefits under the North Carolina Workers Compensation Act?
***********
Based upon all of the competent evidence of record, the Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the 28 October 1997 hearing, the plaintiff-employee was a 28 year old high school graduate.
2. The plaintiff-employee sustained an electrical shock at work on 18 June 1996 when she reached into a power box with her right hand for keys to open the defendant-employers restaurant. However, the plaintiff-employee did not seek medical treatment for this injury by accident until 3 July 1996, when she presented to Lincoln Community Health Center complaining of tingling in her right hand and difficulty holding onto items. The plaintiff-employee was referred to Dr. Ugo Goetzl, a neurologist.
3. On 29 July 1996, the plaintiff-employee presented to Dr. Goetzl. Dr. Goetzl performed nerve conduction studies on the plaintiff-employee which revealed bilateral carpal tunnel syndrome. Dr. Goetzl opined in his 18 September 1996 clinical notes that, "In view of the abnormal median nerve conduction studies bilaterally, the CTS antedated the electrical injury.
4. Dr. Goetzl determined that it was unlikely that the plaintiff-employees electrical injury caused her carpal tunnel syndrome to be symptomatic. Dr. Goetzl did not know what was causing the plaintiff-employees right arm pain, but stated that electrical injuries usually do not cause such pain and that although arm and shoulder pain can be seen in carpal tunnel syndrome, it usually is not to the degree reported by the plaintiff-employee. Dr. Goetzl confirmed that there was no evidence of radiculopathy or myelopathy.
5. Dr. Goetzl opined that the plaintiff-employees carpal tunnel syndrome was not caused, worsened or aggravated by the plaintiff-employees electrical injury at work on 18 June 1996.
6. On 25 November 1996, the plaintiff-employee presented to Dr. Paul B. Suh for evaluation of plaintiff-employees back and neck pain. The plaintiff-employee reported to Dr. Suh that she first developed problems in her back following her on-the-job injury of 18 June 1996, but failed to inform Dr. Suh of her prior automobile accident and subsequent chronic back problems since that automobile accident. Dr. Suh diagnosed the plaintiff-employee with cervical sprain/strain and lumbar sprain/strain. Dr. Suh again evaluated the plaintiff-employee on 10 February 1997 and his diagnosis at that time was an electrical injury to her right upper extremity. However, Dr. Suhs records do not indicate that any of the plaintiff-employees alleged medical problems and conditions are related to her electrical injury of 18 June 1996. Therefore, more weight is given to the diagnosis of Dr. Goetzl, a neurologist and the plaintiff-employees treating physician, who was more familiar with the plaintiff-employees overall medical status than to Dr. Suhs 10 February 1997 diagnosis of the plaintiff-employee.
7. The plaintiff-employee presented to Dr. Virginia Pact, a neurologist, during March and April of 1997. The plaintiff-employee reported that she was jerked against a wall following her injury hitting her head and entire spine. The plaintiff-employee reported that immediately following her injury, her right arm throbbed, her head hurt, and her stomach hurt. The plaintiff-employee stated that several weeks following her injury, she noted the onset of blurred vision.
8. Dr. Pact diagnosed the plaintiff-employee with chronic pain syndrome effecting the entire spine and right arm, along with depression and sleep disturbance. Dr. Pact was concerned the plaintiff-employee may suffer from RSD, but stated that she could not relate the plaintiff-employees blurred vision and possible raised discs to the plaintiff-employees electrical injury at work on 18 June 1996, since the plaintiff-employee did not complain about these problems until several weeks following the injury.
9. On the plaintiff-employees final visit to Dr. Pact on 22 April 1997, Dr. Pact diagnosed the plaintiff-employee with chronic pain and depression. The plaintiff-employee failed to go to her 7 May 1997 appointment with Dr. Pact.
10. Dr. Pacts records fail to indicate that any of the plaintiff-employees alleged medical problems and conditions are related to her electrical injury of 18 June 1997.
11. The plaintiff-employee presented to Dr. J. Richard Marion, an ophthalmologist, on 6 October 1997. Dr. Marion diagnosed the plaintiff-employee with optic disc edema, right eye greater than left eye, but his records do not indicate that the plaintiff-employees vision problems are in any way related to her on-the-job injury of 18 June 1996.
12. At the hearing, the plaintiff-employee testified that she had no prior problems with her arm, hand, wrist or shoulder before 18 June 1996 and further testified that she had no prior diagnosis of carpal tunnel syndrome, bursitis, nerve problems, numbness or tingling before 18 June 1996. However, the competent medical evidence in the record establishes that on 16 June 1995 at Duke University Medical Center, the plaintiff-employee complained of tingling sensations radiating from both elbows to her wrists and tips of her fingers on both hands. Furthermore, on 7 March 1996, the plaintiff-employee complained of lower back pain, side pain and chronic back pain which she had experienced during the preceding two years.
13. Dr. Goetzl opined that the medical records from Duke University Medical Center reveal that the plaintiff-employee suffered from pre-existing carpal tunnel syndrome and that it is not pathologically possible for an electrical injury to cause carpal tunnel syndrome. Dr. Goetzl further stated that the plaintiff-employee was symptomatic prior to her 18 June 1996 electrical shock and did not experience a worsening of her condition following the electrical shock.
14. The competent medical evidence in the record establishes that the plaintiff-employees employment with the defendant-employer was not causally related to the plaintiff-employee contracting carpal tunnel syndrome, a back injury, blurred vision, right leg pain, right shoulder pain and neck pain. The plaintiff-employees medical problems and conditions are a result of some other non-work related event.
15. The competent medical evidence in the record establishes that the plaintiff-employees carpal tunnel syndrome, back injury, blurred vision, right leg pain, shoulder pain and neck pain were not caused, aggravated or worsened by her electrical injury of 18 June 1996.
16. The plaintiff-employee did not carry her burden of proving that her blurred vision, carpal tunnel syndrome, back pain, right leg, right shoulder pain and neck pain were causally related to her employment with defendant-employer on 18 June 1996.
17. The defendant-employer did not wrongfully, improperly and unilaterally terminate the plaintiff-employees temporary total disability benefits on 30 August 1996. The defendant carrier filed a Form 63 with the Industrial Commission, paying plaintiffs claim without prejudice. Then the defendant carrier timely filed a Form 61 with the Industrial Commission, denying the claim and terminating compensation. These Forms were misfiled at the Commission because an Industrial Commission file number had not been assigned to the claim because there was a question of coverage.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on 18 June 1996 when she retrieved the keys from a power box to open the defendant-employers restaurant. N.C. Gen. Stat. 97-2(6).
2. Plaintiff failed to carry her burden of proof to establish that her blurred vision, carpal tunnel syndrome, back pain, right leg pain, right shoulder pain and neck pain was causally related to her employment with the defendant-employer on 18 June 1996. Since the plaintiff failed to carry her burden of proof in this case, she is not entitled to any further benefits under the North Carolina Workers Compensation Act beyond those already received from the defendant-employer.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiffs claim for benefits beyond those already paid by the defendant-employer to plaintiff-employee must be, and are DENIED.
2. Each side shall bear its own costs.
This 8th day of February, 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER